NOT FOR PUBLICATION                                    [Docket No. 15]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| JAMES BOARDMAN <br><br> Plaintiff, <br><br> v. <br><br> RIVERSIDE TOWNSHIP, PATRICK VACANTI, et al., <br><br> Defendants. | Civil No. 04-5779(RMB) <br><br> **OPINION** |

APPEARANCES:

David A. Avedissian, Esq.
135 Kings Highway East
Haddonfield, NJ
856-857-1901
     Attorney for Plaintiff

Richard L. Goldstein, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East, Suite 300
Cherry Hill, NJ
856-414-6000
     Attorney for Defendant, Sgt. Patrick Vacanti

**BUMB**, United States District Judge:

     This matter comes before the Court upon a motion by a

Defendant in the above-captioned matter, Sgt. Patrck Vacanti

("Vacanti"), for summary judgment.  In his Complaint, Plaintiff,

James Boardman, ("Boardman" or "Plaintiff"), asserts several

causes of action against Vacanti including: allegations, brought

1

pursuant to 42 U.S.C. § 1983, that Vacanti violated Plaintiff's

Forth Amendment rights via false arrest, malicious prosecution,

and excessive force; allegations that Plaintiff's Fourteenth

Amendment rights to Equal Protection and Due Process were

violated; and, state law claims for false arrest, false

imprisonment, assault, malicious prosecution, intentional

infliction of emotional distress and negligent infliction of

emotional distress.

**Factual Background:**

On August 10, 2001, Plaintiff, James Boardman, along with

two other males, walked past the house of Angela Graves, who

lived in Riverside, New Jersey.  Ms. Graves was sitting on the

porch with her husband and her mother.  Ms. Graves alleges that

the three males asked Ms. Graves if she had "a f---ing problem"

and said they would "kick her ass."  Def.'s SOF at ¶¶ 4-5.  Ms.

Graves also stated that the three males, including Boardman,

would come back with weapons and destroy Graves' home and cars.

Id. at ¶6.  Plaintiff denies that he made any of these

statements.

After Ms. Graves called 911, the police arrived and observed

Boardman and the other two males.  The officer who initially

reported to the scene stated that Boardman ran away from his

vehicle.  While Plaintiff denies running, he stated in his

deposition that when the police car arrived he "hopped" over a fence. Pl.'s Dep. at 44:5-16.

What happens next is highly disputed and forms the crux of the Plaintiff's complaint against Defendant.  For ease, this Court will recount Plaintiff's version of the facts first, then Defendant's version.  Plaintiff alleges that, once over the fence, he heard the police say "freeze" and once hearing that order:

> I took three more steps, put my hands like this, and the next thing I know I was tackled from my lower back and my face smashed into the gravel. . . my face was smashed in and the next think I know I was getting struck in the back of my head.  All I can see was the light going up and down, up and down.  I know I got struck at least eight to ten times.

Pl.'s Dep. at 46:19-47:1.

Plaintiff further alleges that he felt a metal object striking the back of his head and that the other two males that were with him at the time of the incident told him he was hit eight to ten times.  Pl.'s Dep. at 54:8-24.

Defendant contends, based on the observations of Officer Jaensch, who observed the incident, that once ordered to stop, Plaintiff began to jog.  (Def.'s Ex. E, Jaensch Investigation Report).  Jeansch observed Boardman pulling away from Vacanti, "becoming violent" and "swinging his right elbow back towards Sgt. Vacanti's head in a real circular motion."  Id.  Vacanti then took Boardman to the ground and Boardman "continued to kick,

3

flail his fists and elbows and tried to get off the ground."  Id.

Following the incident, Plaintiff was charged with

harassment, terroristic threats, obstruction of the

administration of the law, resisting with force and aggravated

assault on a police officer.  The charges of obstructing,

resisting, and assault were later dismissed.  (Docket No. 21,

Pl.'s Amend. Ex. B).


**Applicable Standard:**

Summary judgment shall be granted if there is no genuine

issue as to any material fact and the moving party is entitled to

a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v.

Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  "In making

this determination, a court must make all reasonable inferences

in favor of the non-movant."  Oscar Mayer Corp. v. Mincing

Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v.

Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  "At

the summary judgment stage the judge's function is not . . . to

weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).


**Discussion:**

As an initial matter, this Court notes that in Plaintiff's

brief in opposition to the instant motion, Plaintiff concedes

that summary judgment is warranted with regard to his Equal

Protection claim.  He further concedes the dismissal of his state

law claims and that all claims for punitive damages under state

law must be dismissed.  For that reason, the Court will not

address those aspects of Vacanti's motion and will grant summary

judgment in his favor on those points.

         Moreover, Plaintiff concedes that there was probable cause

to arrest him with regard to the residents's complaints against

him and a curfew violation.  Because it is well established in

this Circuit that "in analyzing false arrest claims, a court, to

insulate a defendant from liability, need only find that

'[p]robable cause . . . exist[ed] as to any offense that could be

charged under the circumstances,'" this Court finds that summary

judgment is appropriate as to Plaintiff's false arrest claim in

light of his concession of probable cause.  Johnson v. Knorr, 477

F.3d 75 (3d Cir. 2007)(quoting Barna v. City of Perth Amboy, 42

F.3d 809, 819 (3d Cir. 1994)).

     This leaves the following claims for the instant motion: 1)

excessive force; 2) malicious prosecution; 3) a due process claim

purportedly brought under the Fourth Amendment; and, 4) the

availability of punitive damages.  These remaining claims will be

discussed in turn.

*a. Excessive Force*[1]

In addressing the issue of excessive force, the Court must first ask whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Graham v. Connor, 490 U.S. 386, 397 (1989).  The factors to be considered include whether the suspects are "actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

The Court is to examine the alleged conduct from "the perspective of 'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Davis v. Twp. of Paulsboro, 421 F. Supp. 2d 835, 854 (D.N.J. 2006) (quoting Graham, 490 U.S. at 396).  Moreover, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' is constitutionally unreasonable[.]".  Id.  Finally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in

---

[1] Plaintiff purports to bring this claim pursuant to both the Forth and Fourteenth Amendments.  This Court notes, however, that the Fourteenth Amendment is inapplicable here because it applies to pre-trial detainees.  See Totton v. Keller, 205 Fed. Appx. 919, 921 (3d Cir. 2006)(unpublished).  The alleged excessive force applied here clearly occurred during the arrest of Plaintiff.  Therefore, only the Fourth Amendment is at issue. See Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) ("we note that excessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process [of the Fourteenth Amendment].")(citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)).  See further discussion infra.

circumstances that are tense, uncertain, and rapidly evolving -
about the amount of force that is necessary in a particular
situation." <u>Graham v. Connor</u>, 490 U.S. at 396-97.

Defendant Vacanti asserts that he is entitled to qualified
immunity on Plaintiff's excessive force claim.  According to the
Third Circuit, as stated in <u>Couden v. Duffy</u>, 446 F.3d 483 (3d
Cir. 2005), in order to receive the benefits of said immunity:

> a court must first decide whether the facts, taken in
> the light most favorable to the plaintiff, demonstrate
> a constitutional violation.  <u>Curley v. Klem</u>, 298 F.3d
> 271, 277 (3d Cir. 2002) (citing <u>Saucier</u>, 533 U.S. at
> 201). If so, the court next determines whether the
> constitutional right in question was clearly
> established.  <u>Id</u>. at 277 (citing <u>Saucier</u>, 533 U.S. at
> 201).  "The relevant, dispositive inquiry in
> determining whether a right is clearly established is
> whether it would be clear to a reasonable officer that
> his conduct was unlawful in the situation he
> confronted." <u>Saucier</u>, 533 U.S. at 202.  "If the
> officer's mistake as to what the law requires is
> reasonable," the officer is entitled to qualified
> immunity.  <u>Id</u>. at 205.

<u>Couden</u>, 446 F.3d at 492.

Therefore, in evaluating the qualified immunity issue, this
Court will first ask whether, the facts alleged show that the
Defendant deprived Plaintiff of a constitutional right.  <u>Saucier
v. Katz</u> 533 U.S. 194, 201 (2001).  If the answer is yes, the
Court must next ask if said right was clearly established at the
time of the events in question, i.e., in light of preexisting law
- was the unlawfulness apparent.  <u>Wilson v. Layne</u>, 526 U.S. 603,

614-15 (1999).[2]  This task must be "undertaken in light of the specific context of the case".  <u>Saucier</u>, 533 U.S. at 201.  The Court must also ask, would it "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," or was there a "reasonable, but mistaken belief[] as to the facts establishing the existence of probable cause." <u>Id</u>. at 202 & 206.

The first step requires this Court to take the facts in a light most favorable to the Plaintiff and determine whether the actions of Vacanti deprived Plaintiff of a constitutional right. Plaintiff asserts that he was tackled from behind and "beaten about the head" by Vacanti even though Plaintiff was standing still with his hands in the air. (Pl.'s Br. at 8).  Plaintiff has denied pulling away from Vacanti, becoming violent or swinging his arm towards Vacanti's head.  Instead, Plaintiff maintains that once he was told to "freeze" he "took three more steps, put my hands like this, and next thing I know I was tackled from my lower back and my face smashed into the gravel."  Pl.'s Dep. 46:19-21.  Moreover, Plaintiff alleges that, after being tackled to the ground, his face was repeatedly smashed into the gravel and that he was hit on the back of the head several times with a blunt object.  See Pl.'s Dep. 54:10-24.

Taking the facts alleged in a light most favorable to

---

[2]  This does not mean, however, that the same situation must have been previously declared lawful or unlawful.  <u>See</u> <u>Couden</u>, 446 F.3d at 495.

Plaintiff, this Court concludes that Vacaniti has violated
Plaintiff's constitutional rights via excessive force.  <u>See</u>
<u>Graham v. Conner</u>, 490 U.S. 386, 395 (1989)(stating that the use
of excessive force is an unlawful "seizure" under the Fourth
Amendment).  Moreover, the constitutional right at issue was
"clearly established under the qualified immunity test."
<u>Couden</u>,446 F.3d at 497.

The next question is whether the officer made a reasonable
mistake as to what the law requires in light of the totality of
circumstances.  If Plaintiff's account is credible, a reasonable
officer at the scene would not think it reasonable to repeatedly
smash Plaintiff's head into the gravel or deliver repeated blows
to the back of the head once Plaintiff had been tackled to the
ground because he was not resisting arrest or attempting to flee.
<u>See</u> <u>Counden</u>, 446 F.3d at 496-97 (discussing relevant factors to
be considered).

The Court notes, however, that the Defendant, via the
testimony of Officer Jaensch, has stated that Plaintiff attempted
to flee and resisted Vacanti by becoming violent.  (Def.'s Ex.
E).  There is no mention of blows to the face or head in
Jeansch's account of the facts.  <u>Id.</u>  Obviously, if Jeansch's
version is credible, it would have a major impact on this Court's
analysis of the reasonableness of Vacanti's conduct.

The Third Circuit has made clear that "while we have

recognized that it is for the court to decide whether an officer's conduct violated a clearly established constitutional right, we have also acknowledged that the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).  Once all historical disputed facts have been resolved, the Court can determine the officers' objective reasonableness.  Id. at 282 (finding that district court erred in deciding disputed historical fact relevant to qualified immunity ruling and stating that the issue should have been resolved by a jury).

At this juncture, this Court is unable to resolve the qualified immunity question without resolution of the underlying disputed factual issue of whether Plaintiff fled, resisted arrest, acted violently or whether he was actually struck repeatedly by Vacanti.  See Monteriro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006)("[a]lthough qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury").  Therefore, this Court will deny summary judgment on this charge and resolve the underlying issues of fact by means of special interrogatories to a jury.  See Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) (discussing use of special interrogatories to allow juries

10

to resolve disputed historical facts material to the qualified

immunity question).


*b. Malicious Prosecution*

To prove malicious prosecution under Section 1983 when the

claim is brought pursuant to the Fourth Amendment, a plaintiff

must show that:

> (1) the defendant initiated a criminal proceeding; (2)
> the criminal proceeding ended in his favor; (3) the
> defendant initiated the proceeding without probable
> cause; (4) the defendant acted maliciously or for a
> purpose other than bringing the plaintiff to justice;
> and (5) the plaintiff suffered deprivation of liberty
> consistent with the concept of seizure as a consequence
> of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007) (quoting Estate

of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

The Third Circuit recently clarified in Johnson v. Knorr,

477 F.3d 75, 85 (3d Cir. 2007), that probable cause to arrest on

one charge does not insulate law enforcement from liability for

malicious prosecution on other charges where no probable cause

exists.  Thus, in examining a claim for malicious prosecution,

based on more than one charge, the court must "separately analyze

the charges claimed to have been maliciously prosecuted."  Id. at

85 (quoting Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991)).

Therefore, this Court will turn to the individual charges claimed

11

to have been maliciously prosecution and address them in turn.[3]

Vacanti asserts that summary judgment is warranted because Boardman cannot demonstrate that probable cause was lacking. Plaintiff correctly points out, however, that the Defendant's brief "fails to differentiate between" the curfew violation and harassment charges, which Plaintiff concedes are backed by probable cause, and the charges of Obstructing Administration of Law (N.J. Stat. Ann. § 2C:29-1), Resisting Arrest (N.J. Stat. Ann. § 2C:29-2(a)), and Aggravated Assault on a Police Officer (N.J. Stat. Ann. § 2C:12-1(b)(5)(a)), which Plaintiff asserts are not supported by probable cause.  Moreover, these charges were dismissed in his favor.  Plaintiff further avers that malice can be inferred "in view of the physical assault plaintiff has alleged." Pl.'s Br. at 11.  While Defendant has not argued that there has been no deprivation of liberty, he does argue that the dismissal of the charges is "immaterial to the analysis of this Court."  This Court disagrees a dismissal "may satisfy the actual innocence requirement"  Backof v. N.J. State Police, 92 Fed. Appx. 852, 857 n.8 (3d Cir. 2004).

As stated above, this Court must "separately analyze the charges claimed to have been maliciously prosecuted." Johnson, 477 F.3d at 85.  The Defendant has failed to discuss the

---

[3] It does not appear that Defendant has asserted the defense of qualified immunity with regard to the malicious prosecution claim.

existence of probable cause as to the individual charges and
instead improperly asserts that because probable cause existed to
as to the curfew offense, Plaintiff's malicious prosecution claim
is foreclosed.  See Def.'s Reply Br. at 2 ("Plaintiff admits that
probable cause existed to initiate the criminal proceeding
because of the curfew violation.").  This assertion is patently
incorrect in light of <u>Johnson</u>'s holding that probable cause on
one offense does not insulate a Defendant from liability for
malicious prosecution on other offenses.  Because Defendant has
made no arguments regarding probable cause as to the individual
charges other than the curfew violation, this Court finds that an
issue of fact remains as to Plaintiff's malicious prosecution
claim and summary judgment must be denied.


*c. Due Process*

     Plaintiff maintains that his excessive force claim
implicates the "Forth Amendment Right to substantive due
Process."  First and foremost, the Court notes that Plaintiff is
incorrect - there is no due process right guaranteed by the
Fourth Amendment.  <u>See</u> <u>Green v. Cooper Hospital/University Med.</u>
<u>Ctr.</u>, 1997 U.S. Dist. LEXIS 19115 at * 6 n.2 (E.D. Pa. Dec. 3,
1997) (discussing improper statement that there is a Fourth
Amendment right to due process).  Likely, Plaintiff is referring
to the Fourteenth Amendment right to due process.

While Plaintiff may have intended to refer to the Fourteenth
Amendment, his brief does not separately address the elements of
a due process claim, but instead refers the sections in
Plaintiff's brief dealing with excessive force.  For example,
Plaintiff refers to "a valid excess [sic] force claim force claim
for conduct committed during the court of an arrest." (Pl.'s Br.
at 11).  However, as noted above, because the conduct complained
of is excessive force that occurred during an arrest, and,
therefore, the Fourth Amendment is implicated; there is no cause
of action under the due process clause of the Fourteenth
Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989) (holding
that "all claims that law enforcement officers have used
excessive force -- deadly or not -- in the course of an arrest,
investigatory stop, or other 'seizure' of a free citizen should
be analyzed under the Fourth Amendment and its 'reasonableness'
standard, rather than under a 'substantive due process'
approach."); Abraham v. Raso, 183 F.3d 279, 288 (3d Cir 1999)
("we note that excessive force in the course of an arrest is
properly analyzed under the Fourth Amendment, not under
substantive due process [of the Fourteenth Amendment].")(citing
Graham v. Connor, 490 U.S. 386, 393-94 (1989)).  Therefore,
summary judgment will be granted in favor of Vacanti as to
Plaintiff's due process claim.

*d. Punitive Damages*

Defendant summarily contends that punitive damages are not available in the instant matter because such damages are only available when a defendant has acted with "malicious intent or evil motive" or "indifference to the rights and safety of others."  Defendant does not set forth an analysis of why his conduct clearly does not rise to this level but instead appears to rest on the assumption that it does not.

Plaintiff, however, asserts that summary judgment on the issue of punitive damages is inappropriate because it is premature in light of the issues of fact that remain as to whether Defendant acted with malicious intent or evil motive. Plaintiff contends that, based on his version of the facts, "it would be impossible that defendant's conduct was not committed maliciously and with reckless or callous disregard of, or indifference to the rights and safety of [P]laintiff."  (Pl.'s Br. at 13).

This Court agrees that, at this juncture, issues of fact remain that preclude this Court from foreclosing the availability of punitive damages.  Specifically, if a jury were to believe Plaintiff's assertions regarding excessive force, that may well support a finding of "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L.

15

Ed. 2d 632 (1983); <u>Springer v. Henry</u>, 435 F.3d 268, 282 (3d Cir. 2006) ("[a] jury may award punitive damages when it finds reckless, callous, intentional or malicious conduct."). Thus, summary judgment will be denied as premature as to punitive damages.


**Conclusion**:

For the reasons stated above, Defendant's motion for summary judgment will be granted with regard to Plaintiff's equal protection, due process, false arrest, and all state claims. Defendant's motion is denied, however, as to Plaintiff's malicious prosecution, excessive force and punitive damages claims.

An accompanying Order will issue this date.


Dated: <u>July 13, 2007</u>                     <u>s/Renée Marie Bumb        </u>
                                        RENÉE MARIE BUMB
                                        United States District Judge

16